Charles E. WAGNER, For Himself and Others Similarly Situated, Appellant,

v.

Reese H. TAYLOR, Jr., Chairman, Interstate Commerce Commission.

No. 83–2252.

United States Court of Appeals, District of Columbia Circuit.

Argued Jan. 30, 1985.

Decided Dec. 24, 1987.

---

85.  *Id.* at 345, 561 F.2d at 343.

86.  See Brief for Appellant at 29.

87.  5 U.S.C. § 552(a)(4)(E) (1982).

88.  See text *supra* accompanying note 15.

Charles E. Wagner, pro se.

Patricia J. Kenney, Asst. U.S. Atty., with whom Joseph E. diGenova, U.S. Atty., Royce C. Lamberth and R. Craig Lawrence, Asst. U.S. Attys. and Craig M. Keats, Atty., Interstate Commerce Commission, were on the brief, for appellees.

Before ROBINSON and STARR, Circuit Judges, and BRYANT,* Senior District Judge.

Opinion for the Court filed by Circuit Judge ROBINSON.

Concurring Opinion filed by Circuit Judge STARR.

SPOTTSWOOD W. ROBINSON, III, Circuit Judge:

On this appeal—his second [1]—Wagner complains of the District Court's denial of his motion seeking a preliminary injunction restraining his employer, the Interstate Commerce Commission (ICC), from alleged discrimination against its black professional, administrative, and technical employees graded GS–9 and above.[2] This disposition was predicated upon a simultaneous ruling, which Wagner also challenges, rejecting his motion for certification of those employees as a class on whose behalf permanent injunctive relief of that type could be sought.[3] For the reasons articulated herein, we affirm.

## I. BACKGROUND

Since the proceedings in the District Court will be examined in detail as further discussion warrants, an overview suffices here. Wagner is a black ICC employee in

---

* Of the United States District Court for the District of Columbia, sitting by designation pursuant to 28 U.S.C. § 294(d).

1. See *Wagner v. Taylor (Wagner I)*, 836 F.2d 566 (D.C.Cir.1987) (appeal from denial of preliminary injunction against retaliation during pendency of litigation); *Wagner v. Taylor (Wagner III)*, 836 F.2d 596 (D.C.Cir.1987) (appeal from dismissal of retaliation claims).

2. *Wagner v. Taylor (Wagner II)*, Civ. No. 82–0444 (D.D.C. Nov. 8, 1983) (memorandum and or-

der), Appendix A for Appellant (A. App.) (A) 1–2 [hereinafter *Injunctive Order*]. The parties have submitted separately-paginated appendices. The capital letter in parentheses preceding the page number indicates the appendix to which reference is made.

3. *Wagner v. Taylor (Wagner II)*, Civ. No. 82–0444 (D.D.C. Nov. 8, 1983) (memorandum), A. App. (A) 3–20 [hereinafter *Certification Memorandum*]; *Wagner v. Taylor (Wagner II)*, Civ. No. 82–0444 (D.D.C. Nov. 8, 1983) (order), A. App. (A) 21 [hereinafter *Certification Order*].

the senior executive service.[4] Originally hired by ICC as a senior trial attorney in 1978, he left after approximately eighteen months to work elsewhere, but was rehired by ICC in August, 1980, as Deputy Director for Enforcement in the agency's Office of Compliance and Consumer Assistance.[5]

Wagner has encountered a number of problems at ICC which he attributes to racial discrimination. During the course of this litigation, he has alleged that when he was first hired he was not allowed to select certain subordinates;[6] that later he was not permitted to exert the powers of his office to discipline a white employee;[7] that he was investigated on an anonymous informant's false charge of bribery;[8] that he

was not promoted when he might otherwise have been;[9] that he has been unfairly rated;[10] and that his supervisory authority has been undermined.[11] Wagner has also charged more broadly that he has suffered from a general pattern and practice of racial discrimination at ICC.[12]

■ These claims—individual to Wagner —have not been developed before the District Court.[13] His initial pleading in the case, denominated a "class action complaint,"[14] cited instances of alleged discrimination against Wagner,[15] but its averments were primarily of ICC's treatment of its black employees as a group,[16] and it requested declaratory and injunctive relief on behalf of the class rather than for Wagner alone.[17] Wagner moved for class certi-

---

4. *Certification Memorandum, supra* note 3, at 2, A. App. (A) 4; see Class Action Complaint for Declaratory and Injunctive Relief ¶ 3, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Feb. 17, 1982), A.App. (A) 74–75 [hereinafter Class Action Complaint].

5. See *Certification Memorandum, supra* note 3, at 1–2, A. App. (A) 3–4; Deposition of Charles Elliot Wagner, *Wagner II,* Civ. No. 82–0444 (filed Sept. 22, 1982), Record Document (R. Doc.) 60A [hereinafter Wagner Deposition].

6. Class Action Complaint, *supra* note 4, ¶ 16, A. App. (A) 78; Wagner Deposition, *supra,* note 5, at 90–92 R. Doc. 60A.

7. Formal Class Action Complaint, ¶ 8, *Wagner v. ICC,* EEOC Case No. 033–082–X2038A (Baltimore Dist. Office) (filed Oct. 7, 1981), A. App. (A) 32 [hereinafter Formal Complaint]; see *Wagner v. ICC,* EEOC Case No. 033–082–X2038A (Baltimore Dist. Office Jan. 18, 1982) (decision) at 2, Appendix C for Appellee (Ae. App.) (C) 289; Wagner Deposition, *supra* note 5, at 130–140, R. Doc. 60A.

8. Class Action Complaint, *supra* note 4, ¶ 17, A. App. (A) 78; Wagner Deposition, *supra* note 5, at 228–232, R. Doc. 60B. This investigation cleared Wagner of any wrongdoing.

9. See Affidavit of Charles Wagner ¶¶ 9–11, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed June 16, 1982), A. App. (A) 110 [hereinafter Wagner Affidavit].

10. *Id.* ¶¶ 12, 13, A. App. (A) 110. The rating occurred after Wagner had lodged complaints of racial discrimination with ICC. Wagner has also asserted these claims in the Class Action Complaint, *supra* note 4, ¶ 26, A. App. (A) 79–80.

11. Wagner Affidavit, *supra* note 9, ¶ 14, A. App. (A) 110–111; Class Action Complaint, *supra* note 4, ¶ 25, A. App. (A) 79.

12. Class Action Complaint, *supra* note 4, ¶ 18, A. App. (A) 78. Wagner alleged additional discriminatory incidents in his Reply to Defendant's Response to Motion to Certify Class Action, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Aug. 2, 1982) at 2–3, A. App. (A) 116–117 [hereinafter Reply], including a charge that he encountered discrimination in the process through which he was hired for his present job. *Id.* Before filing suit, Wagner pressed his claim at the agency level and through the complaint process of the Equal Employment Opportunity Commission (EEOC). See note 56 *infra.*

13. Because of the procedural posture of this case, no "facts developed at the trial of the plaintiff['s] individual claims" are available for our review on the issue of class certification. See *East Tex. Motor Freight Sys., Inc. v. Rodriguez,* 431 U.S. 395, 406 n. 12, 97 S.Ct. 1891, 1898 n. 12, 52 L.Ed.2d 453, 463 n. 12 (1977).

14. Class Action Complaint, *supra* note 4, at 1, A. App. (A) 74.

15. *Id.* ¶¶ 13, 15–18, 25–26, A. App. (A) 77–80.

16. *Id.* ¶¶ 7–12, 18–24, A. App. (A) 75–79.

17. *Id.* Prayer for Relief, A. App. (A) 80–81. There is some indication that Wagner has no desire to proceed on his individual claims if this court affirms the order refusing class certification, see *Wagner II,* Civ. No. 82–0444 (D.D.C. May 17, 1984) (order), reproduced as Attachment B to Brief for Appellee, but that, even if so, has no bearing on our decision today. Those claims are now extant, though held "in abeyance pending the decision of the Court of Appeals," *id.,* and notwithstanding what their

fication shortly after his suit was brought.[18]

Wagner's complaint and his motion for class certification alleged widespread discrimination against black workers at ICC—in hiring, promotion, and other terms and conditions of employment—in violation of Title VII of the Civil Rights Act of 1964.[19] Wagner asked for certification of a plaintiff class composed of all black professional, technical and administrative employees in positions graded GS–9 and above, and all black applicants for those positions.[20] After completion of discovery, Wagner supplemented his class-certification motion with a citation of discrimination complaints filed in ICC's equal employment office and with statistics on black representation in the upper echelons of the agency.[21]

While the District Court was considering the request for class certification, ICC discharged Thomas Wilson, a black GS–12 contract specialist within the class that Wagner hoped to represent.[22] Wagner then moved for a preliminary injunction [23] charging that he was fired because of his complaints to ICC of racial discrimination.[24] Wagner sought an order reinstating Wilson, enjoining ICC from reprisals against Wagner and other potential class members, and affording relief insuring an environment free from reprisal.[25] ICC opposed the motion, asserting that Wagner had no standing to represent Wilson,[26] and that in any event Wilson had not been discharged

future status may be. Moreover, were the class certified—the very matter determined—the litigation presumably will continue. We thus reject ICC's argument, see Brief for Appellee at 15–22, that a mere intention to forego individual relief if the class is not certified somehow divests this court of power to consider and resolve the issue on class certification.

**18.** Plaintiff's Motion to Certify Class, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed June 16, 1982) A. App. (A) 83.

**19.** Pub.L. No. 88–352, tit. VII, 78 Stat. 253, as extended by Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (codified as amended at 42 U.S.C. §§ 2000e *et seq.* (1982)). Wagner also claimed that ICC's course of conduct has impinged upon Exec. Order No. 11478 (1969), 34 Fed.Reg. 12,985, *reprinted* as amended following 42 U.S.C. § 2000e (1982). Class Action Complaint, *supra* note 4, ¶¶ 1, 18–21, A. App. (A) 74, 78–79. Wagner's complaint further asserted that ICC has engaged in a pattern and practice of racial discrimination by its "virtual exclusion" of black employees from high-level positions, *id.* ¶ 18, A. App. (A) 78, and has treated them differently in the terms and conditions of their employment by denying them training, supervisory support and "authority," *id.* ¶ 20, A. App. (A) 78.

**20.** Wagner originally envisioned a class consisting simply of technical and professional employees. Class Action Complaint, *supra* note 4, ¶ 8, A. App. (A) 75–76. He later broadened his bid to include administrative employees. Supplemental Motion for Class Certification, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Mar. 1, 1983), A. App. (A) 146–149 [hereinafter Supplemental Motion]. The words "technical," "professional" and "administrative" are defined in Federal Personnel Manual System, FPM Bulletin No. 292–7 (Office of Personnel Management) (July 29, 1981), Attachment 2, reproduced as Exhibit B to Affidavit of Richard H. Mooers (filed June 7, 1982), in support of Defendant's Memorandum in Opposition to Plaintiff's Motion to Certify Class, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed July 13, 1982), R. Doc. 39 [hereinafter Mooers Affidavit]; *id.* ¶¶ 18–19, R. Doc. 39.

**21.** Supplemental Motion, *supra* note 20, A. App. (A) 146–148.

**22.** Motion for Temporary Restraining Order and Preliminary Injunction ¶ 20, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Sept. 20, 1983), R. Doc. 92 [hereinafter Injunction Motion].

**23.** *Id.* ¶ 5, R. Doc. 92. In the same motion, Wagner also asked for a temporary restraining order, which the District Court, stating that "imminent irreparable injury" was lacking, denied on the day of filing. *Id.* at 1, R. Doc. 92.

**24.** *Id.* ¶¶ 7, 30, R. Doc. 92.

**25.** *Id.* at 5–6, R. Doc. 92. Wagner claimed, on First Amendment grounds, a right to an "environment free from reprisal." *Id.* ¶¶ 24, 26, 28, 29, R. Doc. 92; see also Surresponse to Defendant's Surreply in Opposition to Plaintiff's Motion for Preliminary Relief ¶¶ 5, 6, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Nov. 3, 1984), R. Doc. 103.

**26.** Opposition to Plaintiff's Motion for Injunctive Relief Requiring Reinstatement of Thomas Wilson While the Certification Motion is Pending, *Wagner II,* Civ. No. 82–0444 (D.D.C.) (filed Oct. 7, 1983) at 15–20, A. App. (B) 67–72 [hereinafter Injunction Opposition]. Indeed, Wilson litigated his discharge on his own. See Brief for Appellee at 11 n. 23; note 123 *infra.*

improperly.[27]

The District Court issued two separate orders. One denied Wagner's motion for certification and ordered that the action proceed solely on Wagner's individual claims.[28] Accompanying this order was a memorandum explaining the basis for the court's action.[29] The second order rejected the motion for preliminary injunction on the ground that Wagner, in consequence of the first order, had no standing to seek relief on behalf of the class.[30]

Wagner has appealed from both orders.[31] ICC argues that we have no jurisdiction to consider the issue on class certification,[32] and urges affirmance of the ruling on the sought-after injunction.[33]

## II. JURISDICTION

We must, at the outset, determine whether we have power to consider the District Court's disposition of Wagner's motion for class certification. We hold that we do, for review of the court's refusal of the preliminary injunction—a review we clearly are

authorized to conduct—requires us to first ascertain whether Wagner's suit can proceed as a class action rather than simply on an individual basis.

■ Federal appellate jurisdiction vis-a-vis district courts extends primarily to "final decisions" of those courts.[34] But Congress has ordained exceptions to this proposition, premised on the need of litigants "to effectually challenge interlocutory orders of serious, perhaps irreparable, consequence." [35] Since the statutory exception relevant here—Section 1292(a)(1)—specifically confers jurisdiction upon the courts of appeals to review interlocutory orders refusing injunctions,[36] our authority to examine the District Court's rejection of Wagner's motion for preliminary injunctive relief cannot be doubted.[37]

■ What remains in dispute, then, is whether we may also consider the court's denial of class certification.[38] The Supreme Court has made clear that an order withholding class certification, standing alone, is not appealable.[39] The Court, how-

27. Injunction Opposition, *supra,* note 26, at 32–34, A. App. (B) 84–86, ICC advanced several additional grounds for denial of injunctive relief, including Wilson's alleged failure to exhaust his administrative remedies, *id.* at 20–23, A. App. (B) 72–75, a lack of jurisdiction to order such relief, *id.* at 23–26, A. App. (B) 75–78, and an absence of conditions warranting such relief, *id.* at 26–35, A. App. (B) 78–87.

28. *Certification Order, supra* note 3, A. App. (A) 21.

29. *Certification Memorandum, supra* note 3, A. App. (A) 3–20.

30. *Injunctive Order, supra* note 2, A. App. (A) 1–2.

31. Brief for Appellant at 4.

32. Brief for Appellee at 22–26.

33. Brief for Appellee at 26–33.

34. 28 U.S.C. § 1291 (1982).

35. *Baltimore Contractors, Inc. v. Bodinger,* 348 U.S. 176, 181, 75 S.Ct. 249, 252, 99 L.Ed. 233, 238 (1955) (footnote omitted); see also *Carson v. American Brands, Inc.,* 450 U.S. 79, 83–86, 101 S.Ct. 993, 996–997, 67 L.Ed.2d 59, 63–65 (1981); *Gardner v. Westinghouse Broadcasting Co.,* 437 U.S. 478, 480, 98 S.Ct. 2451, 2453, 57 L.Ed.2d 364, 367–368 (1978).

36. 28 U.S.C. § 1292(a)(1) (1982).

37. E.g., *Adams v. Vance,* 187 U.S.App.D.C. 41, 44, 570 F.2d 950, 953 (1977); *Flight Eng'rs' Int'l Ass'n v. National Mediation Bd.,* 119 U.S.App. D.C. 171, 172, 338 F.2d 280, 281 (1964).

38. Wagner's appeal from the ruling on preliminary injunction focuses on whether class certification was properly withheld. Brief for Appellant at 24–28. ICC contends that we are without jurisdiction to entertain that question. Brief for Appellee at 22–26. Wagner notes, however, that it was the agency itself that argued before the District Court that the injunction should be refused on the ground that he could not represent the class he was attempting to have certified, Reply Brief for Appellant at 16–18—the position ICC advanced in its Injunction Opposition, *supra* note 26, at 15–20, A. App. (B) 67–72.

39. *Gardner v. Westinghouse Broadcasting Co., supra* note 35, 437 U.S. at 480–482, 98 S.Ct. at 2453–2454, 57 L.Ed.2d at 367–368; *Coopers & Lybrand v. Livesay,* 437 U.S. 463, 477, 98 S.Ct. 2454, 2462, 57 L.Ed.2d 351, 362–363 (1978). In *Gardner,* the plaintiff sought to appeal under § 1292(a)(1) from an order refusing class certification, arguing that the practical effect of that ruling would be denial of a substantial portion of the injunctive relief sought, 437 U.S. at 480, 98 S.Ct. at 2453, 57 L.Ed.2d at 367, but the trial court had issued no order respecting such relief.

ever, expressly left open the question whether a concomitant withholding of both class certification and preliminary injunctive relief provides a foundation for an immediate appeal,[40] and the issue has not heretofore been precisely resolved in this circuit. We are faced with the need to do so now, and in evaluating the relevant caselaw, we are mindful of the Court's admonition that Section 1292(a) must be "approach[ed] ... somewhat gingerly lest a floodgate be opened that brings into the exception many pretrial orders." [41]

A canvass of the numerous decisions addressing the scope of review under that section reveals substantial unanimity that a statutorily-authorized appeal from an interlocutory order may open the door to examination of another order not otherwise then appealable.[42] One of the many holdings illustrating this judicial course is our own in *Energy Action Educational Foundation v. Andrus,* [43] where we deemed appropriate, on an appeal from a refusal to issue a preliminary injunction, consideration of the denial of a motion for summary judgment.[44] We stated that

> "[r]eview quite properly extends to all matters inextricably bound up with the remedial decision.... [T]he scope of review may extend further to allow disposition of all matters appropriately raised by the record, including entry of final judgment. Jurisdiction of the interlocutory appeal is in large measure jurisdiction to deal with all aspects of the case that have been sufficiently illuminated to enable decision by the court of appeals without further trial court development." [45]

We cautioned, however, that decision of other aspects of the case must be restricted to those "closely related" to the subject of the interlocutory appeal authorized.[46]

Other circuits have echoed the view that the reviewing court may address issues that are "inextricably intertwined" [47] or "substantially interdependent" [48] with an

**40.** *Gardner v. Westinghouse Broadcasting Co., supra* note 35, 437 U.S. at 479 n. 3, 98 S.Ct. at 2453 n. 3, 57 L.Ed.2d at 367 n. 3.

**41.** *Switzerland Cheese Ass'n v. E. Horne's Market, Inc.,* 385 U.S. 23, 24, 87 S.Ct. 193, 195, 17 L.Ed.2d 23, 25 (1966).

**42.** See, in this circuit alone, *Noxell Corp. v. Firehouse No. 1 Bar–B–Que Restaurant,* 245 U.S. App.D.C. 242, 245, 760 F.2d 312, 315 (1985) (on appeal from order on preliminary injunction, review of ruling on motion to dismiss for improper venue is appropriate); *Investment Co. Inst. v. FDIC,* 234 U.S.App.D.C. 237, 242, 728 F.2d 518, 523 (1984) (on appeal from order directing FDIC to determine whether bank could be permitted to sell mutual fund shares and enjoining bank from selling such shares pending that determination, court could decide whether statutory scheme committed to unreviewable agency discretion FDIC's decision not to take up and decide the question); *Energy Action Educ. Found. v. Andrus,* 210 U.S.App.D.C. 20, 30, 654 F.2d 735, 745 (1980), *rev'd on other grounds,* 454 U.S. 151, 102 S.Ct. 205, 70 L.Ed.2d 309 (1981) (discussed *infra* at notes 43–46); *Lee v. Ply\*Gem Indus.,* 193 U.S.App.D.C. 112, 116, 593 F.2d 1266, 1270, *cert. denied,* 441 U.S. 967, 99 S.Ct. 2417, 60 L.Ed.2d 1073 (1979) (denial of motion to dismiss for lack of personal jurisdiction and want of proper venue properly reviewable on appeal from order refusing stay of proceedings pending arbitration); *E.P. Hinkel & Co. v. Manhattan Co.,* 165 U.S.App.D.C. 140, 143, 506 F.2d 201, 204 (1974) ("[a]n appeal from an order made appealable by 28 U.S.C. § 1292 carries with it the power to review the merits of the case").

**43.** *Supra* note 42.

**44.** 210 U.S.App.D.C. at 30, 654 F.2d at 745. The Supreme Court's reversal on the merits made no mention of any jurisdictional defect in this connection.

**45.** *Id.* at 30 n. 54, 654 F.2d at 745 n. 54 (quoting 16 C. Wright, A. Miller, E. Cooper & E. Gressman, Federal Practice § 3921, at 17 (1977)).

**46.** *Energy Action Educ. Found. v. Andrus, supra* note 42, 210 U.S.App.D.C. at 31 n. 54, 654 F.2d at 746 n. 54.

**47.** *Long v. Bureau of Economic Analysis,* 646 F.2d 1310, 1317 (9th Cir.), *vacated on other grounds,* 454 U.S. 934, 102 S.Ct. 468, 70 L.Ed.2d 242 (1981); accord, *Phoceene Sous–Marine, S.A. v. U.S. Phosmarine, Inc.,* 682 F.2d 802, 805 (9th Cir.1982).

**48.** *Port Auth. Police Benevolent Ass'n v. Port Auth.,* 698 F.2d 150, 152 (2d Cir.1983); see also *Marcera v. Chinlund,* 595 F.2d 1231, 1236 n. 8 (2d Cir.), *vacated on other grounds,* 442 U.S. 915, 99 S.Ct. 2833, 61 L.Ed.2d 281 (1979); *Sanders v. Levy,* 558 F.2d 636, 643 (2d Cir.1976), *adhered to on this point en banc,* 558 F.2d 646, 647–648 (2d Cir.1977), *rev'd on other grounds sub nom. Oppenheimer Fund, Inc. v. Sanders,*

appealable interlocutory order.[49] Some of the circuits have held specifically that a denial of class certification may be investigated on an appeal from action taken on a motion for a preliminary injunction;[50] and that, we think, is as it should be. Indeed, when the availability of provisional relief is as tightly interwoven into the fabric of class certification as it is in the case at bar, a narrower construction of Section 1292(a)(1) would impinge upon the congressionally conferred right to an interlocutory appeal from the refusal of an injunction.[51]

We believe, then, that we have both the power and the duty to review the District Court's class-certification order as well as its order on the motion for a preliminary injunction. That court expressly rejected the motion solely "in light of" its contemporaneous denial of class certification.[52] Without review of the determination on class certification, effective review of the order on the injunction request would be seriously impaired. We have, then, a matter—class certification—"inextricably bound up with the remedial decision"[53]—the ruling on preliminary injunctive relief—which is properly before us under Section 1292(a)(1). We turn accordingly to an examination of the District Court's action on Wagner's motion for class certification.

## III.  Class Certification

### A.  General Considerations

■  Without a doubt, the District Court is "uniquely well situated" to make rulings on the propriety of class certification.[54] Nonetheless, it remains our responsibility to review those rulings carefully and to rectify any erroneous application of legal criteria and any abuse of discretion.[55] With this limited role in mind, we proceed to consider the District Court's rejection of

437 U.S. 340, 98 S.Ct. 2380, 57 L.Ed.2d 253 (1978); *Adashunas v. Negley,* 626 F.2d 600, 602 (7th Cir.1980).

**49.** *Payne v. Travenol Laboratories, Inc.,* 673 F.2d 798, 808 (5th Cir.), *cert. denied,* 459 U.S. 1038, 103 S.Ct. 451, 74 L.Ed.2d 605 (1982); see also cases cited *infra* note 50. Commentators have suggested equally broad or broader statements of this rule. See 9B J. Moore & B. Ward, Moore's Federal Practice ¶ 110.25[1], at 270 (2d ed. 1987) ("[t]he appellate court is not ... limited solely to a consideration of the order upon which the appeal is based, for its jurisdiction embraces such other orders, although interlocutory and in themselves non-appealable, and such questions as are basic to and underlie the order supporting the appeal"); 16 C. Wright, A. Miller, E. Cooper & E. Gressman, *supra* note 45, § 3921, at 16–20, quoted in text accompanying note 45 *supra.*

In a related line of cases courts have held that if inquiry pertaining to a ruling respecting preliminary injunction reveals that the case is entirely without merit and that it would be a waste of judicial resources to permit the appeal to continue, it may be dismissed in its entirety. See *Thornburgh v. American College of Obstetricians & Gynecologists,* 476 U.S. 747, 756–758, 106 S.Ct. 2169, 2176–2177, 90 L.Ed.2d 779, 790–791 (1986); *Deckert v. Independence Shares Corp.,* 311 U.S. 282, 286–287, 61 S.Ct. 229, 232–233, 85 L.Ed. 189, 193–194 (1940); *Smith v. Vulcan Iron Works,* 165 U.S. 518, 525, 17 S.Ct. 407, 410, 41 L.Ed. 810, 812–813 (1897); *Lee v. Ply*Gem Indus., supra* note 42, 193 U.S.App.D.C. at 116, 593 F.2d at 1270; see also *Kershner v. Mazurkiewicz,*

670 F.2d 440, 449 n. 10 (3d Cir.1982) (*en banc*). We refer to these cases for their support of the breadth of permissible review, and not as a suggestion that a disposition on that basis would be appropriate here.

**50.** *Port Auth. Police Benevolent Ass'n v. Port Auth., supra* note 48, 698 F.2d at 152; *Kershner v. Mazurkiewicz, supra* note 49, 670 F.2d at 446–449; *Payne v. Travenol Laboratories, Inc., supra* note 49, 673 F.2d at 808; *Adashunas v. Negley, supra* note 48, 626 F.2d at 602; *Jenkins v. Blue Cross Mut. Hosp. Ins., Inc.,* 522 F.2d 1235, 1238 (7th Cir.1975).

**51.** See *Kershner v. Mazurkiewicz, supra* note 49, 670 F.2d at 449.

**52.** *Injunctive Order, supra* note 2, at 1–2, A. App. (A) 1–2.

**53.** *Energy Action Educ. Found. v. Andrus, supra* note 42, 210 U.S.App.D.C. at 39 n. 54, 654 F.2d at 745 n. 54, more fully quoted *supra* in text accompanying note 45.

**54.** *McCarthy v. Kleindienst,* 239 U.S.App.D.C. 247, 251, 741 F.2d 1406, 1410 (1984).

**55.** *Id.* at 251, 741 F.2d at 1410; *Bermudez v. United States Dep't of Agric.,* 160 U.S.App.D.C. 150, 157, 490 F.2d 718, 725, *cert. denied,* 414 U.S. 1104, 94 S.Ct. 737, 38 L.Ed.2d 559 (1973); *Moore v. Hughes Helicopters, Inc.,* 708 F.2d 475, 479 (9th Cir.1983); *Freeman v. Motor Convoy, Inc.,* 700 F.2d 1339, 1347 (11th Cir.1983).

Wagner's motion.[56]

■ It is readily apparent that a decision on class certification cannot be made in a vacuum. While, of course, a court does not possess "any authority to conduct a preliminary inquiry into the merits of a suit in order to determine whether it may be maintained as a class action," [57] it is evident that some inspection of the circumstances of the case is essential to determine whether the prerequisites of Federal Civil Rule 23 [58] have been met.[59] Necessarily, the court must examine both the claims presented and the showing in support of class certification for their adherence to the requirements of Rule 23.[60]

**56.** In addition to holding that Wagner had not met the normal preconditions to class certification, the District Court denied his motion therefor on the ground that he had not timely and sufficiently exhausted his individual remedies before ICC. *Certification Memorandum, supra* note 3, at 6–9, A. App. (A) 8–11; see 42 U.S.C. § 2000e–16(c) (1982); 29 C.F.R. §§ 1613.211–1613.283 (1987). According to the court, some of Wagner's administrative complaints were timely, but it ruled that in terms of subject matter they were too narrow to serve as a basis for a class action. *Certification Memorandum, supra* note 3, at 8, A. App. (A) 10.

However, while still in administrative litigation, Wagner filed a detailed class-action complaint with ICC—a complaint that appears to be in full compliance with the Equal Employment Opportunity Commission's regulations regarding such complaints. See Formal Complaint *supra* note 7, A. App. (A) 30–36. The complaint alleged not only specific instances of discrimination against Wagner individually but also charged discriminatory practices with respect to promotion and retention of class members, see *id.* ¶ 20, A. App. (A) 33, and buttressed the charge with statistics capable of showing discrimination against black employees at ICC's higher grade levels. *Id.* ¶¶ 22–25, A. App. (A) 34. This complaint was broad enough to alert ICC to the claims that Wagner was later to assert in the District Court. See, e.g., *President v. Vance,* 200 U.S.App.D.C. 300, 307–310, 627 F.2d 353, 360–363 (1980); *Eastland v. Tennessee Valley Auth.,* 553 F.2d 364, 372 (5th Cir.1977), *cert. denied,* 434 U.S. 985, 98 S.Ct. 611, 54 L.Ed.2d 479 (1977); *Griffin v. Carlin,* 755 F.2d 1516, 1532 (11th Cir.1985).

We are mindful that ICC argued before the District Court that Wagner's administrative class complaint was untimely. Memorandum by Defendant in Opposition to Plaintiff's Motion to Certify the Class, *Wagner v. Taylor (Wagner II)* Civ. No. 82–0444 (filed July 13, 1982) at 16–17, R. Doc. 43a [hereinafter Opposition Memorandum]. Wagner, in response, cited events indicating a continuing violation, Reply, *supra,* note 12, at 19–21, A. App. (A) 133–135, which would render the complaint timely. *McKinney v. Dole,* 246 U.S.App.D.C. 376, 387 n. 23, 765 F.2d 1129, 1140 n. 23 (1985); *Milton v. Weinberger,* 207 U.S.App.D.C. 145, 151, 645 F.2d 1070, 1076 (1981); *Shehadeh v. Chesapeake & Potomac Tel. Co.,* 193 U.S.App.D.C. 326, 339–340, 595 F.2d 711, 724–725 (1978). Our disposition of this case, however, makes resolution of this point unnecessary.

**57.** *Eisen v. Carlisle & Jacquelin,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732, 748 (1974); see also *Lilly v. Harris–Teeter Supermarket,* 720 F.2d 326, 332–333 (4th Cir.1983), *cert. denied,* 466 U.S. 951, 104 S.Ct. 2154, 80 L.Ed.2d 539 (1984) (court must be "concerned with the commonality (not the apparent merit) of the claims"); *Kuck v. Berkey Photo, Inc.,* 81 F.R.D. 736, 739 (S.D.N.Y.1979) ("[o]nce plaintiffs have demonstrated ... a reasonable basis for crediting the assertion that aggrieved individuals do exist in the broader class they propose, then it is inappropriate for this court to attempt to resolve material factual disputes on a motion for class certification") (footnotes omitted).

**58.** Fed.R.Civ.P. 23, quoted in relevant part *infra* note 61.

**59.** See *Huff v. N.D. Cass Co.,* 485 F.2d 710, 714 (5th Cir.1973) (*en banc*) (discussing conceivable tension between Rule 23(c)(1)'s demand for punctuality in ruling on class certification and the ban on decisions on merits at certification stage); *Moore v. Hughes Helicopters, Inc., supra* note 55, 708 F.2d at 480 ("some inquiry into the substance of a case may be necessary to ascertain satisfaction of the commonality and typicality requirements of Rule 23(a)"); *Nelson v. United States Steel Corp.,* 709 F.2d 675, 679–680 (11th Cir.1983) ("[w]e reject [the] argument that evidence relating to discrimination allegedly suffered by other class members is properly reserved for trial on the merits").

**60.** The need to delve into the circumstances of the case in order to evaluate compliance with Rule 23 in a Title VII action was elaborated in *Stastny v. Southern Bell Tel. & Tel. Co.,* 628 F.2d 267 (4th Cir.1980):

[T]he broad remedial purposes of Title VII and the undoubted utility and fitness of the class action device for many Title VII actions do not relieve the obligation imposed by subsections (a) and (b) of Rule 23 to inquire into the specific fitness, on its own facts, of each Title VII case for which class action status is sought....

In Title VII cases this means adapting the closely related inquiries into commonality of issues, typicality of claims, and adequacy of representation to the specific factual claims as shaped by either or both of the two substan-

Rule 23 [61] inquiries in the context of Title VII racial discrimination suits have presented courts with a peculiar set of problems. These stem from the fact, as stated by the Supreme Court, that "racial discrimination is by definition class discrimination." [62] Recognition of this fact has left uncertain the degree of permissiveness tolerable in applying the requirements of Rule 23 in Title VII litigation, and has promoted a difference of opinion as to the proper standard for certifying Title VII classes.

At one point many courts adopted the "across-the-board" approach to Title VII class certification. By this technique, any case featuring a proposed class composed of all members of a minority group connected in some fashion with a particular employer is deemed to present common questions of law or fact, regardless of individual variations in terms of discriminatory practices suffered or injuries sustained, merely by virtue of an allegation that racial discrimination had occurred. [63] These courts thus permitted a named plaintiff in one job category to represent employees in another job category, or a discharged employee to represent current employees, reasoning that although different members of the class may have been harmed in different ways, "the 'Damoclean threat of a racially discriminatory policy hangs over the racial class [and] is a question of fact common to all members of the class.' " [64]

More recently, however, the Supreme Court warned that careful attention to the

---

tive theories of liability—disparate treatment and disparate impact—that have emerged in Title VII doctrine.... 

It is in relation to the "pattern or practice" element of both substantive theories that the commonality criteria for class action maintenance become most critical in Title VII litigation. Indeed at this point the class action and merit inquiries essentially coincide. For to answer the procedural questions—whether there is a sufficiently homogeneous class vis-a-vis an identified practice to permit binding or benefitting it by class judgment; whether the issues presented in respect of the putative class members' claims have sufficient commonality to permit their resolution on an unindividualized basis; whether the individual claim of a representative plaintiff is sufficiently "typical" to permit its use as the prototype for resolution of the common claims of the class; and whether, given the nature of the representative's claim, adequate representation of class members' claims can be assured from the representative's efforts—in effect requires answering the substantive question whether, under either of the available theories, there exists the requisite "pattern or practice" sufficiently and comparably affecting an identifiable class of protected employees.

*Id.* at 273–274 (footnotes omitted); see also cases cited *supra* note 59; cf. *Gilchrist v. Bolger,* 89 F.R.D. 402, 405–406 (S.D.Ga.1981), *aff'd in relevant part,* 733 F.2d 1551, 1554–1556 (11th Cir.1984) ("[p]laintiff's burden of proof to demonstrate the existence of this common question entails more than the simple assertion of its existence, but less than a prima facie showing of liability").

**61.** Rule 23(a) provides:
(a) Prerequisites to a Class Action. One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

**62.** *General Tel. Co. v. Falcon,* 457 U.S. 147, 157, 102 S.Ct. 2364, 2370, 72 L.Ed.2d 740, 750 (1982); see also *East Tex. Motor Freight Sys., Inc. v. Rodriguez, supra* note 13, 431 U.S. at 405, 97 S.Ct. at 1898, 52 L.Ed.2d at 463 ("suits alleging racial or ethnic discrimination are often by their very nature class suits, involving classwide wrongs").

**63.** The Fifth Circuit first articulated the across-the-board theory in *Johnson v. Georgia Highway Express, Inc.,* 417 F.2d 1122, 1124 (5th Cir.1969).

**64.** *Id.* at 1124 (quoting *Hall v. Werthan Bag Corp.,* 251 F.Supp. 184, 186 (M.D.Tenn.1966)); see also *Wetzel v. Liberty Mut. Ins. Co.,* 508 F.2d 239, 247 (3d Cir.1975), *cert. denied,* 421 U.S. 1011, 95 S.Ct. 2415, 44 L.Ed.2d 679 (1975) (allowing discharged employees to represent current employees); *Long v. Sapp,* 502 F.2d 34, 43 (5th Cir.1974) (allowing discharged employee to represent potential, current and past employees); *Reed v. Arlington Hotel Co.,* 476 F.2d 721, 722–723 (8th Cir.), *cert. denied,* 414 U.S. 854, 94 S.Ct. 153, 38 L.Ed.2d 103 (1973) (allowing discharged employee to represent incumbent employees and applicants); *Jordan v. County of Los Angeles,* 669 F.2d 1311, 1322 (9th Cir.), *vacated on other grounds,* 459 U.S. 810, 103 S.Ct. 35, 74 L.Ed.2d 48 (1982) (certifying class encompassing different job categories); *Rich v. Martin Marietta Corp.,* 522 F.2d 333, 340 (10th Cir.1975) (same).

requirements of Rule 23 "remains nonetheless indispensable" in Title VII class actions.[65] Even more lately, and more importantly, in *General Telephone Company v. Falcon*,[66] the Court held erroneous the certification of a class combining disappointed Mexican–American job applicants allegedly victimized by discrimination in hiring practices with current Mexican–American employees allegedly suffering from discrimination in promotions, and in the terms and conditions of their employment. The Court said:

> [Plaintiff's] complaint provided an insufficient basis for concluding that the adjudication of his claim of discrimination in promotion would require the decision of any common question concerning the failure of petitioner to hire more Mexican–Americans.... If one allegation of specific discriminatory treatment were sufficient to support an across-the-board attack, every Title VII case would be a potential company-wide class action. We find nothing in the statute to indicate that Congress intended to authorize such a wholesale expansion of class-action litigation.[67]

"The mere fact," the Court added, "that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." [68]

■ What the Court demands from those seeking certification of a class cutting across employment status or job categories is a "specific presentation" identifying the questions of law or fact common to the class representative and the members of the class proposed.[69] The Court has identified two qualifying presentations, the first involving an employer who used a biased testing procedure to evaluate both applicants for employment and incumbent employees seeking promotions, and the second attacking an employer whose general policy of discrimination manifested itself in hiring and promotion in the same general manner, such as through entirely subjective decisionmaking processes.[70] Significant proof of either practice, then, should assure certification of a class containing both actual and potential employees.

Moreover, while in *Falcon* the Supreme Court emphasized the controlling effect of Rule 23(a) standards to Title VII class actions, it clearly did not foreclose all across-the-board class certifications, nor did it suggest that determinations thereon should turn on the skill with which pertinent allegations in the pleadings are crafted. The fact that the complaint of a plaintiff aspiring for the post of class representative is cast in terms too broad to satisfy *Falcon*'s prescriptions hardly justifies outright disapproval of class status while further effort holds out some discernible prospect of achieving compliance. It may be possible, for example, for the plaintiff to accumulate through discovery the information needed to make a "specific presentation" incorporating the elements called for by Rule 23.[71] Additionally, the situation may prompt the District Court to exercise its broad discretion to redefine and reshape the proposed class to the point that it qualifies for certi-

**65.** *East Tex. Motor Freight Sys., Inc. v. Rodriguez, supra* note 13, 431 U.S. at 405, 97 S.Ct. at 1898, 52 L.Ed.2d at 463.

**66.** *Supra* note 62.

**67.** *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 158–159, 102 S.Ct. at 2371, 72 L.Ed.2d at 751 (footnote omitted).

**68.** *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15, 72 L.Ed.2d at 751 n. 15.

**69.** *Id.* at 158, 102 S.Ct. at 2371, 72 L.Ed.2d at 751.

**70.** *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15, 72 L.Ed.2d at 751 n. 15.

**71.** *Sirota v. Solitron Devices, Inc.,* 673 F.2d 566, 571 (2d Cir.1982); see *Bradford v. Sears, Roebuck & Co.,* 673 F.2d 792, 795–798 (5th Cir.1982) (reversing District Court for failure to develop adequate information concerning facts of the case before ruling on class certification when serious questions of commonality and typicality were raised by the pleadings).

fication under Rule 23. As in all class actions of other types, the court in a Title VII case can narrow the definition of the class,[72] divide the proposed class into subclasses [73] and permit class members to opt out of the class,[74] as may be warranted by the circumstances. In this manner, and without adversely affecting persons who will be bound by the ultimate decision, the court can remain faithful to the fundamental purpose of Title VII to stamp out employment discrimination, though it impacts the interests of more than the particular complainant.[75]

In reviewing the District Court's decision in this case, we look to Wagner's allegations, and to the presentation he made in the District Court in support of his motion for class certification, in order to determine whether the motion was correctly evaluated in light of Rule 23(a)'s insistence upon commonality, typicality and adequacy of representation.[76] We address, in turn,

each of these requirements, and the District Court's rulings thereon.

## A.  Typicality

The District Court held that Wagner's promotional discrimination claims were not typical of those of the class he desired to represent.[77] The court based this finding on the fact that Wagner, as a member of the Senior Executive Service, was subject to ratings and promotional criteria different from those of the regular general schedule employees who made up the proposed class.[78] The court also found that Wagner's inability to win promotion to high-level one-of-a-kind positions in the agency was not representative of promotional disappointments that had been suffered by lower-graded members of the class.[79] The court concluded that Wagner's "experience as a successful attorney and member of the elite SES is 'hardly typical of the widespread acts of discrimination he wishes to attack on behalf of the

---

72.  See, e.g., *Eastland v. Tennessee Valley Auth.*, 704 F.2d 613, 616–618 (11th Cir.1983) (affirming District Court's narrowing of proposed Title VII class).

73.  See, e.g., *Rosario v. Cook County*, 101 F.R.D. 659, 664, 33 Fair Empl.Prac.Cas. (BNA) 905, 909 (N.D.Ill.1983) (creating subclasses in Title VII suit).

74.  See, e.g., *Grogan v. American Brands, Inc.*, 70 F.R.D. 579, 584 (M.D.N.C.1976) (requiring notice detailing opt-out right to be sent to class in action under Rule 23(b)(2)). For a discussion of different approaches to Title VII class certification, see Note, *Certifying Classes and Subclasses in Title VII Suits*, 99 Harv.L.Rev. 619 (1986).

75.  The legislative history of the Equal Employment Opportunity Act of 1972, Pub.L. No. 92–261, 86 Stat. 103 (codified as amended at 42 U.S.C. §§ 2000e to 2000e–17 (1982)), demonstrates that Congress was well aware of the need for, and strongly supported the use, of class actions to rectify systematic employment discrimination. The Senate Report noted that such discrimination was a "complex and pervasive phenomenon," and not simply a series of "isolated and distinguishable events," S.Rep. No. 415, 92d Cong., 1st Sess. 5 (1971), *reprinted in* Subcomm. on Labor of the Senate Comm. on Labor and Public Welfare, 92d Cong., 2d Sess., Legislative History of the Equal Employment Opportunity Act of 1972, at 414 (1972) [hereinafter Legislative History], and both the Senate and Conference Committees recognized the frequently recurring need for class actions in Title

VII disputes. See S.Rep. No. 415, 92d Cong., 1st Sess. 27 (1971), *reprinted in* Legislative History, *supra*, at 436; Section-by-Section Analysis of H.R. 1746, the Equal Employment Opportunity Act of 1972, 118 Cong.Rec. 7563, 7565 (1972), *reprinted in* Legislative History, *supra*, at 1847 ("[a] provision limiting class actions was contained in the House bill and specifically rejected by the Conference Committee").

76.  See Fed.R.Civ.P. 23(a)(2)–(4). We do not consider the call for numerosity. See *id.* 23(a)(1). In dealing with most of Wagner's class claims, the District Court did not address that requirement, and with our disposition of the case we do not reach it.

77.  The District Court combined its discussion of commonality and typicality. This was certainly within the purview of its authority, for, as the Supreme Court has noted, "[t]he commonality and typicality requirements of Rule 23(a) tend to merge." *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13, 72 L.Ed.2d at 750 n. 13. For the sake of greater conceptual clarity, however, we have reclassified the District Court's points under the heading of either commonality or typicality, and we discuss each aspect of the court's reasoning in connection with our analysis of the corresponding requirement.

78.  *Certification Memorandum, supra* note 3, at 12–13, A. App. (A) at 14–15.

79.  *Id.* at 13, A. App. (A) at 15.

class.' " [80]

To be sure, these factors show that Wagner is not a typical ICC employee, but they do not necessarily establish that his claims of promotional discrimination are atypical of those of the class. Courts have held that typicality is not destroyed merely by "factual variations." [81] As one court has put it, "the fact that the jobs performed by the named plaintiffs are, in some sense, unique, is not a bar to their being class representatives. If it were, no class of professional employees could ever be certified." [82]

■ We conclude that the uniqueness of Wagner's position does not become the determining factor when the proposed class is tested by the typicality requirement. We thus reject the proposition that Wagner's high position alone renders his claims against ICC atypical of those of the class. We hold that in assaying the results of an application of that requirement to the case at bar, the court must consider whether Wagner suffered injury from a specific discriminatory promotional practice of the employer in the same manner that the members of the proposed class did, and whether Wagner and the class members were injured in the same fashion by a general policy of employment discrimination. [83]

■ One of Wagner's claims is that ICC's performance evaluations are conducted in a discriminatory manner, producing a disproportionate share of low ratings for black employees. Wagner avers that he has himself applied for and been refused promotions [84] and that his chances for future promotion are dim because of his race. [85] Along with other ICC employees, Wagner is subject to performance analyses, [86] and is exposed to possible adverse consequences if the results of the analyses are lowered for discriminatory reasons. [87] Though Wagner is a member of an "elite" service, [88] he has an interest, like all other members of the class, in being fairly evaluated. If Wagner's allegations are true, his individual claim of promotional discrimination is typical of the claims of those who would comprise the proposed class.

■ The District Court also felt that Wagner would not be a suitable representative of the class because, it said, his experience with ICC has been objectively favorable. [89] The court's memorandum opinion noted that Wagner was a "successful attorney" and declared that it would be inappropriate for him to represent employees who had not been promoted. [90] The real question, however, is not whether Wagner has been "successful" but whether progress toward even greater success in his professional career has been impeded by reason of his race. If performance evaluations are discriminatory, Wagner has been hurt in the same way that any other member of the proposed class has, whether "successful" or not. We conclude that the District Court focused upon the wrong aspects of

---

**80.** *Id.* (quoting *Rowe v. Bailar,* 26 Fair Empl. Prac.Cas. (BNA) 1145, 1147 [Available on WESTLAW, 1981 WL 372] (D.D.C. 1981)).

**81.** *Donaldson v. Pillsbury Co.,* 554 F.2d 825, 831 (8th Cir.), *cert. denied,* 434 U.S. 856, 98 S.Ct. 177, 54 L.Ed.2d 128 (1977); see *De la Fuente v. Stokley–Van Camp, Inc.,* 713 F.2d 225, 232 (7th Cir.1983); *Gibson v. Local 40, Int'l Longshoremen's & Warehousemen's Union,* 543 F.2d 1259, 1264 (9th Cir.1976); *Penn v. San Juan Hosp.,* 528 F.2d 1181, 1188–1189 (10th Cir.1975).

**82.** *Meyer v. MacMillan Publishing Co.,* 95 F.R.D. 411, 414 (S.D.N.Y.1982) (citation omitted); see also *Paxton v. Union Nat'l Bank,* 688 F.2d 552, 562 (8th Cir.1982) (holding that "[t]ypicality is not defeated because of the varied promotional opportunities at issue, or the differing qualifications of plaintiffs and class members") (citations omitted).

**83.** See *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15, 72 L.Ed.2d at 751 n. 15.

**84.** Wagner Affidavit, *supra* note 9, ¶ 9, A. App. (A) 110.

**85.** *Id.* ¶¶ 10–11, A.App. (A) 110.

**86.** *Id.*

**87.** See note 109 *infra.*

**88.** *Certification Memorandum, supra note* 3, at 13, A. App. (A) 15.

**89.** *Id.* at 12–13, A. App. (A) 14–15.

**90.** *Id.* at 13, A. App. (A) 15.

Wagner's position and achievements in ruling that his claims are not typical of those of the proposed class.

## B. *Commonality*

The District Court found additionally that Wagner did not meet the commonality requirement of Rule 23(a), in part because the court anticipated that different methods of proof would be utilized in any effort to establish the individual and the class claims. Proof of Wagner's personal claims, the court assumed, would be attempted by analysis of his qualifications in relation to those of other more favorably treated employees,[91] while the class claims would primarily involve "statistical analyses of ICC's practices supplemented with scattered examples of alleged misconduct."[92] "When such divergent methods of proof of individual versus class claims are involved," the court said, "courts have held that there are not enough common questions of law or fact to satisfy the commonality and typicality requirements of Rule 23."[93]

The District Court's approach misconceives the nature of the evidence accept-able in a Title VII disparate-treatment class action such as Wagner's, and thus distorts an application of the test for commonality. An action of that kind—the so-called "pattern or practice" suit—requires proof that the treatment challenged as discriminatory was a "standard operating procedure—the regular rather than the unusual practice."[94] The plaintiff can establish a prima facie case of discriminatory conduct without demonstrating that each class member is the victim of the discriminatory practice.[95] Statistical evidence, for example, may suffice if the disparities in treatment are significant.[96]

The major role played by statistical evidence in these cases, however, does not preclude resort to proof of individual instances of discrimination. Ofttimes, class plaintiffs offer a combination of statistics and testimony of particular instances of discrimination in the effort to prove the claims of the class.[97] The Supreme Court in one such case observed that "[t]he individuals who testified about their personal experiences with the company brought the cold numbers convincingly to life."[98]

**91.** *Id.* at 13, A. App. (A) 15.

**92.** *Id.*

**93.** *Id.* at 13–14, A. App. (A) 15–16 (citing *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 157–159, 102 S.Ct. at 2371, 72 L.Ed.2d at 750–751) (additional citations omitted).

**94.** *International Bhd. of Teamsters v. United States,* 431 U.S. 324, 336, 97 S.Ct. 1843, 1855, 52 L.Ed.2d 396, 416 (1977) (footnote omitted). The term "pattern or practice" initially referred to suits brought by EEOC under 42 U.S.C. § 2000e–6(c) (1982), but the Supreme Court has recognized that the elements of such a case are the same as those of a private class action. See *Cooper v. Federal Reserve Bank,* 467 U.S. 867, 876 n. 9, 104 S.Ct. 2794, 2800 n. 9, 81 L.Ed.2d 718, 728 n. 9 (1984); see also *International Bhd. of Teamsters v. United States, supra,* 431 U.S. at 358–360, 97 S.Ct. at 1866–1867, 52 L.Ed.2d at 429–430 (judging government "pattern or practice" suit by private class action standards). Thus, "class-wide allegations of discrimination are commonly referred to as 'pattern or practice cases.'" *Segar v. Smith,* 238 U.S.App.D.C. 103, 120, 738 F.2d 1249, 1266 (1984), *cert. denied,* 471 U.S. 1115, 105 S.Ct. 2357, 86 L.Ed.2d 258 (1985).

**95.** See *International Bhd. of Teamsters v. United States, supra* note 94, 431 U.S. at 360, 97 S.Ct. at

1867, 52 L.Ed.2d at 430; *Franks v. Bowman Transp. Co.,* 424 U.S. 747, 772, 96 S.Ct. 1251, 1268, 47 L.Ed.2d 444, 406 (1976); *Thompson v. Sawyer,* 219 U.S.App.D.C. 393, 420, 678 F.2d 257, 284 (1982).

**96.** See, e.g., *Hazelwood School Dist. v. United States,* 433 U.S. 299, 307–308, 97 S.Ct. 2736, 2741–2742, 53 L.Ed.2d 768, 777 (1977); *International Bhd. of Teamsters v. United States, supra* note 94, 431 U.S. at 339–340 n. 20, 97 S.Ct. at 1856 n. 20, 52 L.Ed.2d at 418 n. 20; *Segar v. Smith, supra* note 94, 238 U.S.App.D.C. at 119–120, 131–133, 738 F.2d at 1265–1266, 1277–1279; *Kinsey v. First Regional Sec., Inc.,* 181 U.S.App. D.C. 207, 216, 557 F.2d 830, 839 (1977); *Wheeler v. City of Columbus, Mo.,* 686 F.2d 1144, 1150 (5th Cir.1982); *Griffin v. Carlin, supra* note 56, 755 F.2d at 1525.

**97.** *Valentino v. United States Postal Serv.,* 218 U.S.App.D.C. 213, 225, 674 F.2d 56, 68 (1982).

**98.** *International Bhd. of Teamsters v. United States, supra* note 94, 431 U.S. at 339, 97 S.Ct. at 1856, 52 L.Ed.2d at 417; see also *Valentino v. United States Postal Serv., supra* note 97, 218 U.S.App.D.C. at 225, 674 F.2d at 68 ("the prima facie case is bolstered and the court's evaluation is aided by testimony recounting personal experiences of class members").

Far from disqualifying a proposed class from certification, disparate methods of demonstrating discrimination are commonplace in Title VII actions of this type. Indeed, it is hard to imagine how it could be otherwise. Employees are unlikely to undertake a Title VII class action unless they feel that they themselves have encountered discriminatory treatment. When it comes to whether the proposed class meets the commonality requirement of Rule 23(a), the mere fact that the undertaking involves evidence of both individual and class discrimination is not determinative one way or the other.

The Supreme Court's decision in *Falcon* is not to the contrary. The would-be class plaintiff there prosecuted an action charging discriminatory practices in hiring and promotion,[99] but produced only individualized evidence with respect to promotions and only classwide evidence on hiring.[100] The Court merely pointed out that proof of promotional discrimination against a particular individual would not suffice to establish a prima facie case of promotional discrimination classwide.[101] The Court did not rule out the possibility of disparate-treatment suits encompassing both individual and class claims, but simply demanded stricter adherence to the requirements of Rule 23(a) prior to certification of the class.[102]

What remains for determination, then, is whether a finding of commonality

in the present case is foreclosed for some other reason. Wagner asked the District Court to certify a class consisting of disappointed applicants and of employees who eventually were fired, denied promotions, or discriminated against in the terms and conditions of their employment.[103] He asserted that the common question of law or fact was "the common threat of discrimination that confronts all members of the class." [104] However, the foregoing discussion makes clear that this allegation, standing alone, is insufficient to establish among members of the proposed class the commonality mandated by Rule 23(a).[105]

Wagner also presented statistics indicating that the ICC's workforce is racially unbalanced. Again, his effort fell short of the mark. Statistics laying bare a racially unbalanced workforce do not make out a prima facie case of disparate treatment absent further evidence drawing comparisons with the relevant labor market.[106] Much less do they show a policy of discrimination manifested in the employer's promotional practices.[107]

Wagner attempted, however, to overcome this deficiency by offering statistics purporting to demonstrate that black employees at ICC have traditionally been assigned a disproportionate share of low performance ratings.[108] This, if true, would identify a discriminatory practice that has retarded the promotion of black employees

99. *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 149, 151–152, 102 S.Ct. at 2366, 2367–2368, 72 L.Ed.2d at 745, 746–747.

100. *Id.* at 158–159, 102 S.Ct. at 2371, 72 L.Ed.2d at 750–751.

101. *Id.*

102. *Id.* at 159 n. 15, 102 S.Ct. at 2371 n. 15, 72 L.Ed.2d at 751 n. 15; see also text *supra* at notes 66–71.

103. See Supplemental Motion, *supra* note 20, at 4, A. App. (A) 149.

104. See Memorandum of Points and Authorities in Support of Plaintiff's Motion to Certify the Class, *Wagner v. Taylor (Wagner II)*, Civ. No.

82–0444 (D.D.C.) (filed June 16, 1982) at 5, A. App. (A) 88.

105. See discussion *supra* at notes 63–71 and accompanying text.

106. See *Hazelwood School Dist. v. United States, supra* note 96, 433 U.S. at 308 n. 13, 97 S.Ct. at 2742 n. 13, 53 L.Ed.2d at 777 n. 13; *McKenzie v. Sawyer,* 221 U.S.App.D.C. 288, 297, 684 F.2d 62, 71 (1982); *Metrocare v. Washington Metro. Area Transit Auth.,* 220 U.S.App.D.C. 104, 112, 679 F.2d 922, 930 (1982).

107. See *Valentino v. United States Postal Serv., supra* note 97, 218 U.S.App.D.C. at 225, 679 F.2d at 68.

108. ICC statistics attached to Affidavit of Charles E. Wagner, *Wagner v. Taylor (Wagner*

as a class.[109] Moreover, these statistics would appear to raise a common question of fact—whether ICC has engaged in a systematic practice of keeping performance ratings of black employees at an artificially low level.[110]

Presentation by a hopeful class plaintiff of ostensibly significant statistics is not the end of the inquiry, however. A court ruling on a class-certification motion must examine the plaintiff's offering and make an initial determination that there is at least a plausible fit between the coverage of the proposed class and the group to which the statistics relate. Thus, figures on performance ratings do not forge a connection between current employees and disappointed job applicants. The existence of some common practices, such as subjective decisionmaking,[111] can form the nexus between employees and applicants,[112] but Wagner has not alleged the existence of such a practice common to both groups. This difficulty could likely be overcome by confining the class to current employees.[113] The District Court could then properly consider whether such a narrowed class would otherwise satisfy the requirements of Rule 23.

In the case before us, however, the effect of this obstacle is compounded by Wagner's failure to establish a correlation between even this narrowed class and the statistics on performance evaluations that favor his claim. It is unclear from the record whether any of the proffered statistics pertain to Wagner's proposed class of employees graded GS–9 and above. Wagner's own analysis of the figures obscures rather than clarifies the issue; his list of conclusions furnishes merely a fragmentary picture which makes it difficult to comprehend the situation facing members of his proposed class as a whole.[114] Plaintiffs seeking class certification are not required to prove the merits of their cases, but their presentations must be specific enough to allow the court to discern at least a rough outline of a class that properly can be certified.

While the statistics relating to an identifiable promotional practice of ICC implied at least the possibility of common questions of fact, Wagner has not identified such a question, nor does one appear from the record. Instead of assembling bits of evidence into a coherent question of possible

II) Civ. No. 82–0444 (filed Mar. 1, 1983), A. App. (A) 64–73 [hereinafter ICC Statistics].

**109.** See 5 U.S.C. § 4303 (1982) (providing for reduction in grade of general schedule employees or the removal on the basis of performance ratings); id. §§ 4311–4314 (governing performance ratings of SES employees).

**110.** See, e.g., *Chisholm v. United States Postal Serv.*, 665 F.2d 482, 492 (4th Cir.1981) (commonality satisfied in attack on specific promotional practices); *Harris v. Marsh*, 100 F.R.D. 315, 324 (E.D.N.C.1983) (finding commonality in attack on promotional process itself).

**111.** See *General Tel. Co. v. Falcon, supra* note 62, 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15, 72 L.Ed.2d at 751 n. 15.

**112.** See *id.* at 158, 102 S.Ct. at 2371, 72 L.Ed.2d at 751; see also, e.g., *Gilchrist v. Bolger, supra* note 60, 89 F.R.D. at 406 ("the simple assertion that applicants have suffered discrimination common with the named plaintiffs is insufficient under Rule 23(a)(2)"). We do not doubt that in some cases, however, applicants and employees may be shown to have the requisite commonality. See, e.g., *Richardson v. Byrd*, 709 F.2d 1016, 1020 (5th Cir.), *cert. denied*, 464 U.S. 1009, 104 S.Ct. 527, 78 L.Ed.2d 710 (1983);

*Johnson v. Montgomery County Sheriff's Dep't*, 99 F.R.D. 562, 565–566 (M.D.Ala.1983).

**113.** See note 72, *supra* and accompanying text.

**114.** See Brief for Appellant at 13–15. An attempt to validate Wagner's conclusions from an examination of the record leads only to a greater dilemma. For example, Wagner states that black employees, who comprised 33.5% of the ICC workforce as of March, 1982, received 76.4% of the minimally satisfactory ratings. *Id.* at 13. This statistic, however, appears to refer to the entire ICC workforce, not merely to Wagner's proposed class of higher-level employees. Moreover, just what significance attaches to the statistic in any event is unclear. If, as was the case here, less than twenty minimally satisfactory ratings are handed out for the entire ICC workforce of over 1,500 employees, the fact that 75% of this small group was black would not necessarily connote a systematic policy of discrimination. The figures cited by Wagner, examined in a similar manner, also show that white employees received 75% of the unsatisfactory ratings. ICC Statistics, *supra* note 108, A. App. (A) 64. Neither figure proves anything about the overall situation of the ICC workforce with respect to performance evaluations.

employer misconduct, he left the District Court with a combination of broad conclusory allegations of widespread discrimination and a jumble of numbers. Clearly, his presentation on this point has failed.

## C. *Adequacy of Representation*

The District Court held that Wagner was unsuitable as a class representative in two respects. First, though a supervisor, Wagner seeks to include nonsupervisory personnel within the class, and the court found that their interests have been and likely will continue to be antagonistic to those of class members who are supervisors.[115] Second, the District Court further found that Wagner's counsel had not properly handled the class action,[116] and that Wagner had improperly appeared *pro se* before the court.[117]

The District Court's first point raises a serious question about the adequacy of Wagner's continued maintenance of the suit as the class representative. As a supervisor, Wagner has interests that, as the court noted, have already clashed with those of other members of the class envisioned.[118] Supervisory employees are often inappropriate representatives of nonsupervisory employees because the structure of the workplace tends to cultivate distinctly different interests between the two groups.[119] Although each group shares the interest in freedom from discrimination, potential conflicts may and do arise within a class including both.[120] In the instant case, supervisors who are members of the proposed class have been responsible for evaluating the performances of other members of the class;[121] indeed, the very individual on whose behalf injunctive relief is sought in this case [122] was allegedly discharged by a black employee who is a potential member of the class.[123] Additionally, Wagner has accused his own supervisor, who is a potential class member, of racial discrimination against Wagner himself.[124] These problems perhaps could be mitigated by a further narrowing of the class, but, taken in combination with another point now to be discussed, they add to the doubt concerning Wagner's suitability to manage the class action.

The District Court also found Wagner to be an inappropriate class representative for reasons arising from the prosecution of the present suit. Wagner had three different attorneys and, in addition, has represented himself in the District Court and acted *pro se* in this court. Wagner and one of these attorneys have filed affidavits as class members,[125] and, as the District Court pointed out, this has raised substantial conflict-of-interest questions implicating the propriety of Wagner to serve as class rep-

115. *Certification Memorandum, supra* note 3, at 14, A. App. (A) 16.

116. *Id.* at 14–15, A. App. (A) 16–17.

117. *Id.* at 15, A. App. (A) 17.

118. See *id.* at n. 5, A. App. (A) 20 n. 5.

119. See *Wells v. Ramsay, Scarlett & Co.,* 506 F.2d 436, 437–438 (5th Cir.1975); *Sperling v. Donovan,* 104 F.R.D. 4, 7 (D.D.C.1984); *Grant v. Morgan Guar. Trust Co.,* 548 F.Supp. 1189, 1193 (S.D.N.Y.1982); *Rodgers v. United States Steel Corp.,* 69 F.R.D. 382, 389 (W.D.Pa.1975); *Steur v. ITT Continental Baking Co.,* 80 F.R.D. 624, 625 (E.D.Va.1977).

120. See, e.g., *Wells v. Ramsay, Scarlett & Co., supra* note 119, 506 F.2d at 437 (named plaintiff, a foreman, inappropriate as representative of class of longshoremen); *Gilchrist v. Bolger, supra* note 60, 89 F.R.D. at 408 (named plaintiffs, nonsupervisory personnel, had interests antago-

nistic to those of supervisory personnel in class).

121. See *Certification Memorandum, supra* note 3, n. 5, A. App. (A) 20 n. 5; see also Mooers Affidavit, *supra* note 20, ¶ 26, R. Doc. 39.

122. See note 26 *supra* and accompanying text.

123. See *Certification Memorandum, supra* note 3, at n. 5, A. App. (A) 20 n. 5. Thomas Wilson, who was fired, brought his own Title VII action against ICC. The District Court decided in favor of the latter. See *Wilson v. Taylor,* Civ. No. 83–3372 (D.D.C. July 31, 1985) [Available on WESTLAW, 1985 WL 5941] (opinion and order).

124. See Reply, *supra* note 12, at 8–9, A. App. (A) 122–123; Opposition Memorandum, *supra* note 56, at 3 n. ****, 7, R. Doc. 43a.

125. *Certification Memorandum, supra* note 3, at 15, A. App. (A) 17.

resentative.[126] Like the District Court, we think Wagner has thus failed to establish the propriety of his representation of the proposed class. While Wagner's problems possibly could be overcome by retention of new counsel for the class, the District Court's experience with Wagner's three attorneys and his current *pro se* status could hardly leave room for a contention that the District Court abused its discretion or otherwise committed reversible error.

## IV. CONCLUSION

Wagner does not satisfy the requirements of Rule 23 for class certification. Accordingly, the District Court did not err in denying Wagner's motion for class certification and, on that account, his request for a preliminary injunction on behalf of his proposed class. The orders under review are hereby

*Affirmed.*

STARR, Circuit Judge, concurring:

I am in agreement with much of Judge Robinson's scholarly opinion and in full accord with the judgment of my colleagues that the District Court did not err in declining Mr. Wagner's invitation to certify this action as a class action. As the panel today once again recognizes, the judges of our District Court are uniquely well situated to resolve the difficult issues appertaining to class certifications. Although I am not entirely persuaded, as are my colleagues, that Mr. Wagner's claims satisfy the requirement of typicality, I am in agreement that the District Court correctly discerned that other failings fatally infected Mr. Wagner's position. That being so, I find it unnecessary to come finally to rest with respect to the nettlesome questions posed by the issue of typicality *vel non* and content myself with expressing my accord with the court's judgment and its excellent opinion on each of the other facets of this factually rich case.

---

126. *Id.; Bachman v. Pertschuk,* 437 F.Supp. 973 (D.D.C.1977). Other courts have forbidden the class attorney to serve as the class representative. *Shields v. Valley Nat'l Bank,* 56 F.R.D. 448, 450 (D.Ariz.1971); *Graybeal v. American Sav. & Loan Ass'n,* 59 F.R.D. 7, 13–14 (D.D.C.1973); *Seiden v. Nicholson,* 69 F.R.D. 681, 687 (N.D.Ill. 1976); *Conway v. City of Kenosha,* 409 F.Supp. 344, 349 (E.D.Wis.1975). We also take note of 18 U.S.C. § 205 (1982), a criminal statute purporting to prohibit a governmental employee from acting as an attorney in prosecuting a claim against the United States. This provision has been interpreted to cover a situation similar to the one before us today. See *Bachman v. Pertschuk, supra,* 437 F.Supp. at 976.