Ronald L. SPERLING, et al., Plaintiffs,

v.

Raymond J. DONOVAN, Secretary of Labor, Defendant.

Civ. A. No. 83–1420.

United States District Court, District of Columbia.

Aug. 17, 1984.

Herbert Rosenblum, David Rosenblum, Alexandria, Va., for plaintiffs.

Mary Coster Williams, Asst. U.S. Atty., Sandra C. McFeeley, Sp. Asst. U.S. Atty., Civ. Div., Washington, D.C., for defendant.

## MEMORANDUM

FLANNERY, District Judge.

This matter is before the court on plaintiff's motion requesting certification of the case as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure and Local Rule 1-13(b). Plaintiffs seek to represent a class consisting of all white employees [1] of the Office of the Assistant Secretary of Administration and Management ("OASAM") at the Department of Labor ("DOL") in Washington, D.C., or alternatively, all OASAM accountants and other white OASAM employees with accounting knowledge and training, who have been victims of defendant's alleged "reverse discrimination" employment practices. The question for the court is whether a class may be certified where, although a potential class can be identified, most of the individual plaintiff's claims are time-barred and cannot be revived under a continuing violation theory. Plaintiffs' time-barred claims are not part of a continuing violation, and the remaining valid claims are not typical of the class. Plaintiffs' motion should, therefore, be denied.

### I. *Background*

Plaintiffs are white accountants at OASAM. They allege a "widespread and consistent pattern and practice of white race discrimination" at OASAM in violation of Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e *et seq.* Pl.Mot. for Certification at 1. Plaintiffs exhausted their administrative remedies and began this action on May 18, 1983.[2]

Although plaintiffs originally alleged twelve areas of employment discrimination,[3] discovery seems to have reduced that number to three areas: 1) promotions, 2) performance evaluations and 3) distribution of awards.

It is well settled that private parties maintaining class actions under Title VII must meet "the prerequisites of numerosity, commonality, typicality and adequacy of representation" as set forth in Rule 23(a). *General Telephone Co. v. EEOC*, 446 U.S. 318, 330, 100 S.Ct. 1698, 1706, 64 L.Ed.2d 319 (1980). The complainant has the burden of showing that he has fulfilled those requirements. *Ricks v. Schlesinger*, 24 FEP Cases 694, 695 (D.D.C.1979).

In the instant case, the defendant contends that plaintiffs are unable to meet that burden. Specifically, defendant argues that any potential claims are too dis-

---

1. In their complaint, amended complaint and motion for certification, plaintiffs seek to represent a class consisting of *all white employees of DOL* across the country. In their Supplemental Memorandum, plaintiffs reduce the scope of the alleged class to OASAM only. Their initial overzealous definition of the class should raise some doubt as to the adequacy of representation and their sincerity in protecting and vindicating class as opposed to individual rights.

2. Plaintiffs sought administrative counseling on December 19, 1975, and filed a formal administrative complaint on July 30, 1976. The complaint was dismissed in October, 1982 for failure to prosecute. Plaintiffs appealed to the Office of Review and Appeals and there is apparently, to date, no resolution of that appeal.

3. Plaintiffs originally alleged discrimination with respect to defendant's practices in employment assignments, promotions and methods of promotions, awards, training, evaluations of performance, work assignments, assignments of job titles, description of duties, levels of supervision, career advancement programs, salaries and incremental raises.

similar to satisfy the commonality and typicality requirements. *See* Fed.R.Civ.P. 23(a)(2), (3). In addition, defendant asserts that most of plaintiffs' claims are time barred, cannot be revived under the continuing violation theory, and any remaining timely claims are not so numerous as to make joinder of those claimants impracticable. *See* Fed.R.Civ.P. 23(a)(1).

## II. *Discussion*

### A. *The basis for membership in the class*

Plaintiffs maintain that a class may properly be certified consisting of *all* white employees in OASAM ("the all white class"). Alternatively, plaintiffs assert that a smaller class comprising all white *accountants* and other white OASAM employees with accounting knowledge and training ("the accountant class") satisfies the Rule 23 requirements.

There are 71 different job categories in OASAM. Plaintiffs have never worked outside those categories relating to accounting. Defendant argues that plaintiffs can raise no questions of law or fact common to all whites in OASAM, and furthermore are unable to present claims that would be typical of such a group. The all white class, he concludes, cannot be certified.

Although the commonality and typicality requirements "tend to merge" in certain circumstances, nevertheless they are intended to address distinct aspects of a potential class. *See General Telephone Co. v. Falcon,* 457 U.S. 147, 157 n. 13, 102 S.Ct. 2364, 2371, 72 L.Ed.2d 740 (1982). The Supreme Court has observed that suits involving alleged racial discrimination "are often by their very nature class suits." *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 405, 97 S.Ct. 1891, 1898, 52 L.Ed.2d 453 (1977). Common questions of law or fact may automatically be present in such suits, but this does not assure typicality of claims. Careful attention must be paid to whether the plaintiff and the class "possess the same interest and suffer the same injury." *Id.* at 403, 97 S.Ct. 1896.

█ In the case at bar, plaintiffs simply assert an identity of interest and injury between themselves and all whites in OASAM's 71 job categories. They have not shown how their claims would be typical of the claims of such a diverse group of employees. Only race unifies that group. More is required to justify certification as a class. The mere allegation of across-the-board racial discrimination is not sufficient. *Falcon, supra* 457 U.S. at 157, 97 S.Ct. 2371; *see also Valentino v. U.S. Postal Service,* 674 F.2d 56, 66 (D.C.Cir.1982). Therefore, plaintiffs cannot be permitted to represent a class consisting of all white employees in OASAM.

The second potential class includes accountants and other white OASAM employees with accounting knowledge and training. The parties dispute whether membership in this class should be determined on the basis of *professional* accounting training, or whether simply some kind of accounting background is sufficient. The defendant calls attention to Mr. Sperling's deposition in which he states that "there has been very little crossover from budget analyst to accountant" and that "a budget analyst cannot be an accountant because the accountant is the professional, whereas the budget analyst does not necessarily have to have an accounting degree." Sperling Dept. at 9–10. These statements are not proof that the class is limited to professional accountants. It should be noted that Mr. Sperling also said that "an accountant can be a budget analyst ... [and] there has been quite a bit of accounting to budget analyst [crossover]." *Id.* The question is whether there is an "accounting nexus" among job categories beyond professional accountants.

The OPM handbook excerpts, provided by the defendant, mention knowledge of accounting and of accounting techniques as one possible factor in evaluating applicants for the computer job series [GS–334 (29 non-minorities at OASAM)], the budget analysis series [GS–560(11)], the financial management series [GS–505(0)], the program analysis series [GS–345(6)], and of

course the accounting and auditing series [GS–510 and 511(20) ] and budget and accounting series [GS–504(0) ].

■ The total number of non-minorities in these job categories is 66. This is large enough to make joinder impracticable. *See, e.g., Bachman v. Collier,* 73 F.R.D. 300 (D.D.C.1976). There is, however, no indication how many of these are supervisory personnel. None of the plaintiffs is a supervisor. It is generally true that supervisory and non-supervisory employees may not be placed in the same class. *See, e.g., Wells v. Ramsay, Scarlett and Co.,* 506 F.2d 436, 437 (5th Cir.1975); *accord, Rowe v. Bailar,* 20 FEP Cases 912,914 (D.D.C. 1980). Assuming this potential class contained as many as twenty supervisors who must be excluded, the group nevertheless would probably be large enough to satisfy the numerosity requirement. *See* Rule 23(a)(1).

In sum, a potential "accountant class" can be identified, limited to accountants and other white employees in OASAM who have accounting training and knowledge. These individuals are likely to work together and share similar employment experiences. Employment discrimination would likely effect them similarly. However, plaintiffs have shown only that this potential class exists. A class cannot be certified in a vacuum. Plaintiffs must also present *valid claims* that are applicable to this class. *See* Rule 23(a)(3).

B. *Most of plaintiffs' claims are time-barred, and do not form part of a continuing violation. Plaintiffs remaining claims are not typical of a class.*

■ The EEOC regulation for processing class complaints of discrimination provides that

an employee or applicant who wishes to be an agent and who believes he/she has been discriminated against shall consult with an Equal Employment Counselor *within 90 calendar days of the matter giving rise to the allegation of individual discrimination.*

29 C.F.R. § 1613.602(a) (emphasis added). Claims arising more than ninety days prior to the administrative complaint are outside the limitation period and are time-barred. *See Trout v. Lehman,* 702 F.2d 1094, 1104 (D.C.Cir.1983). A discriminatory act that is not charged in a timely fashion may constitute background evidence in the consideration of a *present* violation. *See United States Air Line, Inc. v. Evans,* 431 U.S. 553, 558, 97 S.Ct. 1885, 1889, 52 L.Ed.2d 571 (1977). Considered separately, however, such a past discriminatory act is "merely an unfortunate event in history which has no present legal consequences." *Id.*

Plaintiffs first sought administrative counseling on December 19, 1975. *See* Amended Complaint at 9. Alleged acts of discrimination occurring before September 21, 1975 are therefore time-barred. In fact, most occurred before that date. However, plaintiffs invoke the continuing violation theory in an attempt to skirt the limitations period. They simply assert that defendant engaged in a "continuing pattern of discriminatory conduct" which dissolves any time-bar. Pl.Mem. at 11.

The courts have carefully limited their application of the continuing violation theory.[4] In *Evans, supra,* where the plaintiff attempted to avoid the statutory filing requirement by alleging that a Title VII violation was continuing, the Court held that "the critical question is whether any

---

4. Courts are aware of the need at the pretrial certification stage to make a determination which, to be fair, must be based on some degree on the merits of the cause of action. A dilemma arises from the "composite command of rule and decision to 'find out early, but not too much.'" *Stastny v. Southern Bell,* 628 F.2d 267, 275 (4th Cir.1980). Where, as here, a claim of continuing violation is made, its resolution

could require considerable inquiry into the merits to "bring such claims into a focus sharp enough to be manageable by the court." *Satterwhite v. City of Greenville, Tex.,* 557 F.2d 414, 420 (5th Cir.1977). Yet this need admittedly conflicts with the Supreme Court's admonition that it finds "nothing in either the language or history of Rule 23 that gives the court authority to conduct a preliminary inquiry into the merits

present *violation* exists. *Id.* at 558, 97 S.Ct. at 1889 (emphasis in original). Most courts require that plaintiff show "a series of related acts, one or more of which falls within the limitations period, or the maintenance of a discriminatory system both before and during the [limitations] period." *Milton v. Weinberger,* 645 F.2d 1070, 1075 (D.C.Cir.1981).

Plaintiffs have simply alleged individual acts of discrimination which they contend represent a large system of discrimination. None of the alleged acts of discrimination relating to promotions falls within the limitations period.[5] Plaintiffs also allege discrimination in performance evaluations that continued throughout their tenure at DOL. Employees generally are evaluated at least once annually. Nonetheless, plaintiffs have adduced no evidence showing that even one specific discriminatory evaluation was made within the filing period.[6]

It is clear that only two alleged acts of discrimination, both relating to distributions of awards,[7] occurred within the relevant period: the first in "fall of 1975" and the second in "December 1975." The former involved a special group accounting project for which "there was an award

given to all the minority members ... and there was no award given to the rest of us." Sperling Dep. at 23. The latter related to a memorandum circulated within OASAM which listed recipients of awards. One of the present plaintiffs was not on the list, although he had recently completed a project for which he believed he deserved special recognition. Cohen Dep. at 41–42. However, another plaintiff, Mr. Kushner, apparently *did* receive an award at that time. *Id.* at 43. Plaintiffs have also submitted a study which purports to show an imbalance in awards distributions between minorities and non-minorities for the years 1972–1976. *See* Pl.Supp.Mem. Attachment. Since the population for the study was 21 individuals in an unidentified "division," its probative value is limited.

■ The continuing violation theory may not be used to "resurrect claims about discrimination concluded in the past." *McKenzie v. Sawyer,* 684 F.2d 62, 72 (D.C. Cir.1982). In addition, it should not be used to incorporate charges of discrimination occurring *after* the filing period. *See Woodard v. Lehman,* 717 F.2d 909, 32 FEP Cases 1441, 1444 (4th Cir.1983). One plaintiff, Mr. Sperling, claims to have suffered

---

of a suit in order to determine whether it may be maintained as a class action." *Eisen v. Carlisle,* 417 U.S. 156, 177, 94 S.Ct. 2140, 2152, 40 L.Ed.2d 732 (1974). The problem has been seen as especially serious in cases, like the instant case, involving class claims of disparate treatment. In such cases, many courts have required almost *prima facie* showings of a classwide pattern of discrimination before certifying a class; other courts have required facts sufficient to support an inference of discrimination. Making such an initial determination is of course helpful in preserving judicial resources and preventing needless litigation. With no happy general solution, the problem remains subject to considerable judicial discretion. *See, e.g., Falcon, supra,* 457 U.S. 147, 102 S.Ct. 2364, 72 L.Ed.2d 740 (1982) (the court may require "specific presentation identifying the questions of law or fact that [are] common to the ... members of the class.") *Id.* at 158, 102 S.Ct. at 2371. *See also* Moore's Federal Practice ¶ 23.-02–2, at 87–104 (2d ed. 1974) ("The trial court has broad discretion in shaping up the class action.") *Id.* at 94; Schlei and Grossman, Employment Discrimination Law at 1245–1257.

5. In the area of promotions, plaintiffs contend that, in 1972 and 1973, certain accountant positions were advertised at lower grade levels in order to attract less qualified minorities; that, in 1970 and 1972, two of the plaintiffs were not interviewed for competitive promotion when minority candidates had also applied; that, in 1974, less qualified minorities were transferred and placed over whites; and that, in 1971 and 1973, panels deliberately favored minority candidates over whites in evaluating promotion applications. These dates are obviously all before September 21, 1975 and are therefore time-barred.

6. Conceivably, plaintiffs could be allowed a "window" for claims involving performance evaluations relating to work which continued into the filing period but was not evaluated until some time later. No claim alleging discrimination during this larger time period has been made.

7. Discrimination in awards distributions is thus the only remaining type of alleged employment discrimination. *See supra* n. 3 and accompanying text.

from promotion discrimination in 1979 and twice in 1979–80. Sperling Dept. at 38–39, 42. Another plaintiff, Mr. Cohen, knows of two other unnamed class members who received lowered performance evaluations, due to alleged discrimination, in 1978 and 1979. Cohen Dep. at 39–40. None of these claims relates to any valid claim filed with-. in the limitations period. Although plaintiffs may have alleged at the time of filing that the violations complained of were continuing in nature, nowhere do they state that such an allegation formed part of their original administrative complaint. As the court said in *Patterson v. General Motors Corp.*, 631 F.2d 476 (7th Cir.1980), "since plaintiff's [administrative] charge did not suggest continuing discrimination, then his charges of discrimination occurring after his [administrative] charge could not form the basis for a complaint in federal court." *Id.* at 483. Furthermore, even if plaintiffs did allege continuing violations in their original complaint, such allegations, *at that time*, would not have overcome the time and filing requirements of the Code of Federal Regulations. The continuing violation theory would not then and will not now revive stale claims of promotion and evaluation discrimination. It follows that it cannot be used to incorporate similar claims arising years later.

■ The prerequisites of Rule 23(a) remain the focus of the class certification inquiry. Plaintiffs have identified a potential class which might reasonably satisfy the numerosity requirement. Allegations of racial discrimination usually raise questions of law or fact common to the class. But the existence of valid claims that will be typical of the class cannot be presumed. Plaintiffs must show that they are entitled to represent the class by presenting valid claims that will resemble those of the class. *See Falcon, supra,* 457 U.S. at 160, 97 S.Ct. at 2372.

On the basis of two instances of alleged discrimination in awards distribution,[8] and a study that is not compelling, plaintiffs wish to maintain an across-the-board attack on defendant's employment practices. In effect, plaintiffs argue that their unsupported allegations of discrimination supply the requisite classwide typicality. Two instances of awards distributions, where plaintiffs simply believed that they deserved more recognition, are not sufficient to support class certification. As the Supreme Court said in *Falcon*, even if further evidence would support the conclusion that individual discrimination had occurred, that evidence "would not necessarily justify the additional inferences 1) that this discriminatory treatment is typical of [defendant's awards] practices, 2) that [defendant's awards] practices are motivated by a policy of ... discrimination ... or 3) that this policy of discrimination is reflected in [defendant's] other employment practices." *Id.* at 158, 102 S.Ct. at 2371. Beyond a host of conclusory statements, plaintiffs have failed to demonstrate with the requisite specificity that their two awards discrimination claims "are typical of the claims ... of the class." *See* Rule 23(a)(3).

### III. *Conclusion*

■ Class certification would be inappropriate because plaintiffs have not satisfied the requirements of Rule 23. Strict adherence to those prerequisites is necessary to avoid unfairness to the defendant and to protect the interests of potential class members who may assert timely, representative claims in the future. *See Arey v. Providence Hospital,* 55 F.R.D. 62, 68 (D.D.C.1972). Most of plaintiffs' claims in the case at bar are not timely. The only remaining claims involve two instances of alleged awards discrimination and seem to be the product of plaintiffs' belief that they deserved greater recognition. No other evidence is supplied to suggest that these

---

**8.** It should be noted that awards are inherently subjective and individualized. Additionally, the proof necessary for plaintiffs' individual discrimination claims will involve comparisons be- tween plaintiffs and the actual award recipients whereas class proof will be largely statistical. Such divergent evidentiary approaches do not support an inference of typicality.

claims might be typical of those of any class members.

An appropriate Order accompanies this Memorandum.