**Peter Fidel GONZALEZ, et al., Plaintiffs,**

**v.**

**Nicholas BRADY, et al., Defendants.**

**No. CA 89–120.**

United States District Court, District of Columbia.

May 16, 1991.

Gilbert Mario Moreno, Washington, D.C., for plaintiffs.

Mark E. Nagle, Asst. U.S. Atty., U.S. Attorney's Office, Washington, D.C., for defendants.

## OPINION

STANLEY S. HARRIS, District Judge.

This matter is before the Court on plaintiffs' motion for class certification, pursuant to Rule 23(b)(2) which allows certification of a class when "the party opposing the class has acted or refused to act on grounds generally applicable to the class...."

### Background

Plaintiffs are eleven Hispanic employees of the United States Customs Service who allege they have suffered and continue to suffer unfair national origin employment

discrimination with regard to assignments, training, promotion opportunities, and disciplinary practices.[1] They further allege that such Customs' policies and practices have been applied broadly, producing manifest imbalances in the advancement of Hispanics at the agency. Plaintiffs primarily seek injunctive relief, pursuant to Title VII of the 1964 Civil Rights Act, 42 U.S.C.A. § 2000e *et seq.*, on behalf of a proposed class that would consist of all Hispanic Customs employees in positions graded GS–9 and above.[2] They intend to proceed under both a disparate treatment theory and a disparate impact theory.

To summarize plaintiffs' specific allegations, plaintiffs allege that Customs assigns a disproportionate number of Hispanic employees to the Southwest, Pacific, and Southeast regions of the United States. This allegedly has had the effect of restricting the advancement of Hispanic agents in relation to their non-Hispanic counterparts, as Customs has not considered Hispanic agents for promotion opportunities in non-Hispanic areas, such as the Canadian border. Plaintiffs furthermore allege that even within their limited geographic range, Hispanic employees have been assigned to positions which have limited opportunities for promotion. They allege, for example, that Customs has assigned a disproportionate number of Hispanics to undercover assignments and "special duties" based upon their fluency in Spanish. These assignments tend to be rigorous, but are not considered career-enhancing. In addition, they allege that non-Hispanic employees are brought into the Southwest, Southeast, and Pacific regions to fill managerial positions.

Plaintiffs also allege that Hispanic employees are denied opportunities for training which are essential to career growth at the Agency, while non-Hispanics are offered such opportunities. Hispanics alleg-

edly also are denied the on-the-job training that non-Hispanics receive by being assigned to temporary, career-enhancing assignments. Additionally, plaintiffs allege that Hispanic employees are disciplined in a discriminatory manner.

Plaintiffs allege that the result of these discriminatory practices is that Hispanics employed by Customs have remained concentrated in grade levels GS–1 through GS–9.[3] There are no Hispanics in the Senior Executive Service and five in grade level GS–15.

## Discussion

As litigants seeking to represent a class under Title VII, plaintiffs must meet the requirements of Federal Rule of Civil Procedure 23(a). *See General Telephone Co. of Southwest v. Falcon*, 457 U.S. 147, 156, 102 S.Ct. 2364, 2369, 72 L.Ed.2d 740 (1982). Under Rule 23(a):

> One or more members of a class may sue or be sued as representative parties on behalf of all only if (1) the class is so numerous that joinder of all members is impracticable, (2) there are questions of law or fact common to the class, (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class, and (4) the representative parties will fairly and adequately protect the interests of the class.

As " 'careful attention to the requirements of Fed.Rule Civ.Proc. 23 remains ... indispensable,' " *Falcon*, 457 U.S. at 157, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez*, 431 U.S. 395, 405, 97 S.Ct. 1891, 1897, 52 L.Ed.2d 453 (1977)), the Court will address each of the requirements for class certification in turn.

### 1. Numerosity

■ The Court need not address this requirement at length, as it clearly has been

---

**1.** Plaintiffs have defined the term "Hispanic" to mean a person of Hispanic surname, ancestry, or ethnic background.

**2.** The named plaintiffs are Peter Fidel Gonzalez, Modesto Canales, Manny Najera, Newton Phillips, Charles H. Mazon, Willie A. Perez, Richard

Medina, Victor Sanchez, Jose A. Serrato, Cary Espinosa, and Alonno Rivera.

**3.** According to statistics provided by plaintiffs, 58% of all Hispanics are in grade levels GS–1 through GS–9. Of the number in those grades, 41% are in grade level GS–9.

met. With 1,452 members of the proposed class, there is no question but that joinder of the members would be impracticable. In addition, courts have certified classes with far fewer members. *See, e.g., Mayfield v. Thornburgh,* 741 F.Supp. 284 (D.D.C.1990) (certifying a class of 109 members); *New Castle v. Yonkers Contracting Co., Inc.,* 131 F.R.D. 38 (S.D.N.Y.1990) (potential class of 36 members satisfied numerosity requirement).

### 2. *Adequacy of Representation*

▋ The representative parties must show that they "will fairly and adequately protect the interests of the class." Fed.R. Civ.Proc. 23(a)(4). This inquiry is two-fold. First, the Supreme Court has "repeatedly held that 'a class representative must be part of the class and "possess the same interest and suffer the same injury' as the class members."'" *Falcon,* 457 U.S. at 156, 102 S.Ct. at 2370 (quoting *East Texas Motor Freight System, Inc. v. Rodriguez,* 431 U.S. 395, 403, 97 S.Ct. 1891, 1896, 52 L.Ed.2d 453 (1977), and *Schlesinger v. Reservists Committee To Stop the War,* 418 U.S. 208, 216, 94 S.Ct. 2925, 2929, 41 L.Ed.2d 706 (1974)). Second, the class representative "must appear able to vigorously prosecute the interests of the class through qualified counsel." *National Ass'n of Regional Medical Programs, Inc. v. Mathews,* 551 F.2d 340, 345 (D.C.Cir. 1976), *cert. denied,* 431 U.S. 954, 97 S.Ct. 2674, 53 L.Ed.2d 270 (1977). Because plaintiffs are represented by able and experienced counsel, the Court need only focus on the adequacy of plaintiffs themselves as class representatives.

The adequacy of representation requirements "tend[s] to merge" with the commonality and typicality requirements. *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. As explained below, the Court finds that plaintiffs have failed to meet their burden with respect to the commonality and typicality requirements. Thus, plaintiffs cannot adequately represent the class.[4]

### 3. *Commonality and Typicality*

▋ "The commonality and typicality requirements of Rule 23(a) tend to merge."[5] *Falcon,* 457 U.S. at 157 n. 13, 102 S.Ct. at 2370 n. 13. It is essential that plaintiffs meet these requirements in order to show that they have bridged the gap between their individual claims and the existence of a class which has the same interests and has suffered the same injury. *Id.* at 157, 102 S.Ct. at 2370; *see also Ross v. Nikko Securities Co. Int'l, Inc.,* 133 F.R.D. 96 (S.D.N.Y.1990). Plaintiffs cannot "simply leap from the premise that they were the victims of discrimination to the position that others must also have been." *Morrison v. Booth,* 763 F.2d 1366, 1371 (11th Cir.1985). "The mere fact that an aggrieved private plaintiff is a member of an identifiable class of persons of the same race or national origin is insufficient to establish his standing to litigate on their behalf all possible claims of discrimination against a common employer." *Falcon,* 457 U.S. at 159 n. 15, 102 S.Ct. at 2371 n. 15.

▋ Plaintiffs provide two types of evidence in attempting to bridge the gap and prove that there are issues of fact and law common to the class and that their own claims are typical of those of the class: the interrogatory answers of the individual plaintiffs and various statistics gathered by the defendants themselves. Statistics generally are offered at the certification stage of litigation to show that a class-wide problem exists. However, there are several problems with plaintiffs' proof.

Roughly one-half of the plaintiffs state that they have been subjected to formal disciplinary measures and that the measures taken were the result of a policy and

---

4. Most notably as to this requirement, plaintiffs have failed to show that they have suffered the same injury as members of the class.

5. This is recognizing, of course, that even if there are common issues of law and fact, typicality is not necessarily assured. *Sperling v.*

*Donovan,* 104 F.R.D. 4, 6 (D.D.C.1984). Where the legal or factual position of the representative is "markedly different" than that of the class, it is not typical. *KAS v. Financial General Bankshares, Inc.,* 105 F.R.D. 453, 461 (D.D.C. 1984), *aff'd,* 796 F.2d 508 (1986).

practice of discrimination against Hispanic employees. However, plaintiffs do not offer any evidence, statistical or otherwise, to show that members of the potential class have had similar disciplinary experiences. Plaintiffs' conclusory statements that they have noticed that their fellow Hispanic employees have been subject to disciplinary procedures in a discriminatory manner will not suffice.

Similarly, plaintiffs fail to offer any evidence that would show that members of the potential class have been denied opportunities for training. A few plaintiffs present examples of denied training opportunities, while others merely offer conclusory statements that they and other Hispanics have been denied training opportunities. In addition, plaintiffs offer some statistics in an attempt to show that Hispanic employees have not been chosen to participate in valued training sessions as often as their non-Hispanic counterparts. However, the statistics show that few Hispanic employees applied for the training sessions.[6] From the few who did apply, the number chosen to participate was not statistically low. Thus, plaintiffs have failed to demonstrate any significant disparity that would support class certification on the issue of training.

As to promotions and assignments, plaintiffs have presented more evidence. They offer several individual examples of their own experiences through their responses to defendants' interrogatories, as well as statistical evidence compiled by Customs.[7] Plaintiffs' individual experiences may provide proof of their own individual claims of discrimination. They might also provide information to be used in determining whether their claims present common issues of law and fact and are typical of the class. Again, however, the Court cannot assume that because these eleven plaintiffs allegedly have had such experiences, 1,452 fellow Hispanic employees have as well. Thus, the Court must examine the statistical evidence plaintiffs provide.[8]

The statistics show that in 1990, Hispanic employees comprised almost 12% of the Customs work force. As noted, there were no Hispanic Customs employees in the Senior Executive Service. Hispanic employees were represented at the relevant grade levels as follows: 14.9% of GS–9 positions; 13.4% of GS–11 positions; 10.1% of GS–12 positions; 6.5% of GS–13 positions; 3.5% of GS–14 positions; and 1.9% of GS–15 positions.[9] From the end of the first quarter of fiscal year 1988 to the same time period in 1989, only one of the 100 Customs employees categorized in the Managerial Type occupational series was Hispanic. During the same time period, Hispanics received 541 promotions out of a total of 4,101 promotions, or 13.2%. That included 4.3% of the promotions in the professional occupational category. In addition, 81% of Hispanic employees are employed in three regions of the United States: the Southwest, the Pacific, and the Southeast. These three regions employ 44% of Customs employees.

As defendants have recognized, the statistical evidence shows that the representation of Hispanic employees decreases as the grade level increases. Plaintiffs in effect ask the Court to stop there and assume that because bottom-line statistics show that Hispanics are less well-represented at the higher grade levels than some

6. Even if plaintiffs were to argue that few Hispanics apply because past discrimination has deterred them, plaintiffs have not provided the Court with affidavits or other proof to show that that is the case.

7. Promotions and assignments are closely related, as often the assignments plaintiffs sought would have themselves been promotions or at least would have led to promotions.

8. The Court also notes that many of plaintiffs' responses to defendants' interrogatories were conclusory rather than descriptive. In fact, some of the same answers were repeated time after time for different plaintiffs. These answers were unhelpful, as plaintiffs' task was to provide facts to persuade the Court to reach the same conclusion plaintiffs have reached. Instead, in many instances, plaintiffs simply repeated their conclusions over and over again.

9. There are no Hispanic employees in positions graded GS–10. However, there are only six total Customs employees at that grade, out of a total of 18,746 Customs employees.

non-Hispanics, there exists an aggrieved class of 1,452 Hispanic employees. The Court cannot make this leap, as plaintiffs' proof falls short in at least two respects.

■ First, plaintiffs' statistics merely compared the relative number of Hispanics and non-Hispanics at the various grade levels. There was no proof offered to show the comparison between similarly situated Hispanic and non-Hispanic employees (*i.e.*, employees with similar qualifications and experience). Thus, their bottom line statistics offer little assistance in establishing the existence of the aggrieved class.[10] *See Ross*, 133 F.R.D. at 97. Second, plaintiffs offered no testimonial proof from potential class members. Most often submitted in the form of affidavits, this type of proof can go far to bolster bottom line statistics. *See, e.g., Selzer v. Board of Educ.*, 112 F.R.D. 176, 180 (S.D.N.Y.1986) (affidavits from named plaintiffs and from potential class members were sufficient to establish the existence of the class where statistics were inconclusive); *Sheehan v. Purolator,*

*Inc.*, 103 F.R.D. 641, 649 (E.D.N.Y.1984) (where statistics failed to provide relevant comparisons or indicate that other employees felt aggrieved, affidavits from individual employees were necessary), *aff'd*, 839 F.2d 99 (2d Cir.), *cert. denied*, 488 U.S. 891, 109 S.Ct. 226, 102 L.Ed.2d 216 (1988). In fact, it is essential in a case such as this to provide specific proof to show that there are issues of fact and law common to the potential class and that plaintiffs' claims are typical of the claims of the potential class.[11]

Plaintiffs may argue that because the eleven named plaintiffs represent all grade levels at issue, they provide enough of a cross-section of the class of Hispanic employees to show that an aggrieved class does exist. However, plaintiffs are asking for permission to act as guardians of the rights of over 1,400 employees, and the Court has not had the opportunity to hear from even one of those employees who would be represented.[12] Having little more

10. Plaintiffs' claims as to promotions and assignments go to the highest levels of government service. "When the job qualifications involved are ones that relatively few possess or can acquire, statistical presentations that fail to focus on those qualifications will not have large probative value." *Valentino v. United States Postal Service*, 674 F.2d 56, 68 (D.C.Cir.1982) (citations omitted). Although the court in *Valentino* was focusing on the class action plaintiffs' prima facie case, the proposition holds equally well here at the certification stage. Because "a decision on class certification cannot be made in a vacuum," the court may examine the circumstances of the case. *Wagner v. Taylor*, 836 F.2d 578, 587 (D.C.Cir.1987).

Additionally, because plaintiffs seek to represent Hispanic employees in all job categories, there would be great diversity in the qualifications required for particular assignments and promotions. Thus, bottom line statistics are even less useful in this context.

11. Plaintiffs might also have provided additional statistics that would be more helpful in showing the existence of an aggrieved class, *e.g.*, statistics showing the number of discrimination complaints filed by Hispanics with the agency.

12. The Court recognizes that "plaintiff[s] can establish a prima facie case of discriminatory conduct without demonstrating that each class member is the victim of the discriminatory practice." *Wagner*, 836 F.2d at 592 (citations omitted). However, the Court must have reliable proof that there are at least some members

of the class that believe that they have been victims of discrimination in the same manner as plaintiffs.

For example, it is generally true that supervisory and non-supervisory employees are not placed in the same class due to the potential for a conflict of interest. *See Sperling*, 104 F.R.D. at 7. Defendants raise this issue and plaintiffs respond in part by stating that only one of the named plaintiffs was ever a supervisor for another named plaintiff and that they had agreed to proceed with the action as co-plaintiffs. Thus, according to plaintiffs, conflict of interest is not an issue. Plaintiffs miss the point. Over 1,400 potential class members must be protected from such a conflict of interest, and plaintiffs provide no testimony from potential class members to assure the court that members at all levels have grievances susceptible to class-wide solutions which effectively cut across all levels.

To provide another example, the Court notes that plaintiffs claim that defendant discriminates against Hispanics by assigning them to the Southwest, Pacific, and Southeast regions. While plaintiffs' position may have some merit, it is also true that those areas of the United States have high populations of Hispanics. It is quite likely true that many Customs employees have chosen to live in those areas. Thus, if plaintiffs ultimately were to prevail and receive the class-wide relief they seek, members of the class could be transferred involuntarily to other regions. For these types of reasons, the Court cannot certify a class absent input from potential class members.

to rely on than plaintiffs' own self-serving assertions, the Court will not bridge the gap between the proposed representatives and the potential class through speculation. Plaintiffs' motion for class certification must be denied.